## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

TRANSWEST EXPRESS LLC, a Delaware limited liability company,

*Plaintiff,*

v.

SONNY PERDUE, Secretary of the United States Department of Agriculture;
MATTHEW LOHR, Chief of the Natural Resources Conservation Service; and
CLINT EVANS, State Conservationist for the Colorado State Office of the Natural Resources
Conservation Service,

*Defendants.*

---

### COMPLAINT/PETITION FOR REVIEW OF FEDERAL AGENCY ACTION

---

Plaintiff TransWest Express LLC ("TransWest") alleges as follows for its complaint/

petition for review of federal agency action.

### INTRODUCTION

1.      TransWest seeks judicial review of two actions by the Natural Resources

Conservation Service ("NRCS"), an agency of the United States Department of Agriculture.

First, TransWest seeks review of NRCS' approval and funding of the Cross Mountain Lower

Ranch Conservation Easement ("Conservation Easement") in December 2014, covering about

16,000 acres of privately-owned land in Moffat County, Colorado.  This Conservation Easement,

as currently administered by NRCS, is blocking construction of a federally-approved

transmission project designed to deliver wind-generated energy from Wyoming to California and

the Desert Southwest.  The NRCS approved and funded this Conservation Easement in violation

of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321, *et seq.*, and the

Agricultural Conservation Easement Program ("ACEP"), 16 U.S.C. § 3865, *et seq.*

2.      Second, TransWest seeks review of NRCS' subsequent refusal in 2019 to consent

to TransWest's condemnation of a small portion (30 acres) of the Conservation Easement for

necessary transmission easements.  NRCS' consent to the condemnation is necessary for the

transmission project to proceed.  NRCS' current refusal to consent to condemnation is contrary

to the basis on which it funded the Conservation Easement.

3.      The actions of NRCS, both in granting the Conservation Easement and in refusing

to consent to condemnation of a small portion of that Conservation Easement, are arbitrary,

capricious, an abuse of discretion, and otherwise not in accordance with law under the

Administrative Procedure Act, 5 U.S.C. § 706.

4.      NRCS' actions are threatening the construction of TransWest's transmission

project, designed to support the largest wind energy project in the United States and the delivery

of clean energy to several Western states, all because NRCS failed to analyze the environmental

impacts of approving the Conservation Easement, and because NRCS is now backtracking on the

basis on which it funded the Conservation Easement.  NRCS' actions also threaten to undo a

multi-million-dollar eight-year environmental analysis of the transmission project, which led to

approval of the transmission line route by the Bureau of Land Management ("BLM") and the

U.S. Department of Energy's Western Area Power Administration ("WAPA").  The potential

ramifications of NRCS' actions are the very reason for the requirement to conduct environmental

review of federal decision-making before it occurs.

## PARTIES

5.      Plaintiff TransWest is a Delaware limited liability company with headquarters located in Denver, Colorado.  TransWest is a wholly-owned subsidiary of The Anschutz Corporation, also located in Denver, Colorado.  Since 2008, TransWest has been actively engaged in developing the TransWest Express Transmission Project ("TWE Project" or "Project"), a high-voltage transmission system that includes approximately 730 miles of transmission line and will provide critical electric transmission infrastructure to support large-scale renewable energy development throughout the western United States.

6.      Defendant Sonny Perdue is the Secretary of the United States Department of Agriculture, and is sued in his official capacity.  Secretary Perdue has supervisory responsibility for actions of NRCS.  NRCS administers ACEP, 16 U.S.C. § 3865 *et seq.*  Under ACEP, NRCS funds agricultural conservation easements on eligible private land.  NRCS provided federal funding for the Conservation Easement.

7.      Defendant Matthew Lohr is Chief of NRCS, the agency that funded the Conservation Easement, and is sued in his official capacity.

8.      Defendant Clint Evans is NRCS State Conservationist for Colorado, and is sued in his official capacity.  The Colorado office of the NRCS was directly involved in NRCS' decision to fund the Conservation Easement.

### Jurisdiction and Venue

9.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331.

10.      The Administrative Procedure Act, 5 U.S.C. §§ 701-706, provides applicable waivers of sovereign immunity and authorizes the relief sought in this action.

11.    Venue is proper in the District of Colorado under 28 U.S.C. § 1391(b) because one of the defendants resides in Colorado, the real property that is the subject of this action is located in Colorado, and substantial events giving rise to this action occurred in Colorado.

## Factual Allegations

### *The TWE Project*

12.    The TWE Project is a high voltage transmission system that will extend across four states from south-central Wyoming to Southern Nevada.  The Project will include approximately 730 miles of transmission line, two terminals located in Wyoming and Utah, and a substation in southern Nevada.

13.    The TWE Project is a $3 billion investment in the United States' transmission infrastructure.  It is one of two energy infrastructure projects being developed concurrently by TransWest's parent corporation, The Anschutz Corporation, at a combined cost of $8 billion. TransWest's affiliate, Power Company of Wyoming LLC, is currently constructing the Chokecherry and Sierra Madre Wind Energy Project (CCSM Project), located in Carbon County, Wyoming.  With a nameplate capacity of over 3,000 megawatts, the CCSM Project will be the largest wind project in North America, generating more electricity annually than the Hoover Dam.

14.    The TWE Project will be capable of delivering renewable wind energy generated in Wyoming to consumers in California and the Desert Southwest.  At the same time, the TWE Project will be capable of delivering excess solar energy generated in California and the Desert Southwest to the Rocky Mountain Region.

15.     TransWest has been developing the TWE Project for over a decade and, to date, has invested over $100 million in its development.

16.     Approximately two-thirds of the Project's 730-mile transmission line (485 miles) is sited on federal land managed by the BLM, U.S. Forest Service ("USFS"), and Bureau of Reclamation ("BOR").  Accordingly, the TWE Project was the subject of over eight years of extensive review pursuant to NEPA.

17.     The TWE Project was subject to the highest form of environmental analysis under NEPA – an Environmental Impact Statement ("EIS").  BLM and WAPA worked as joint lead agencies on the preparation of the EIS, assisted by 50 formal cooperating agencies including the USFS, BOR, National Park Service, U.S. Fish and Wildlife Service, Advisory Council on Historic Preservation, numerous Indian Tribes, and numerous state and local government agencies including the State of Colorado and Moffat County, Colorado.  During the NEPA process, these agencies evaluated thousands of miles of alternative Project routes to determine the single route that would best mitigate the environmental impacts of the Project as a whole.

18.     Before granting and funding the Conservation Easement, NRCS was aware of the NEPA process and BLM's and WAPA's ongoing analysis of the most environmentally sound route for the TWE Project, including through lands ultimately included within the Conservation Easement.

19.     BLM and WAPA issued a Draft EIS in June 2013 and a Final EIS in May 2015. BLM issued its Record of Decision ("ROD") approving the Project in December 2016.  WAPA issued its ROD approving the Project in January 2017.  Based on the analysis described in the Final EIS, and pursuant to the Federal Land Policy and Management Act, BLM created a new

transmission corridor for overhead transmission lines ("BLM/WAPA Transmission Corridor") and BLM issued a Right-of-Way ("ROW") Grant to TransWest in June 2017 that aligned with the new BLM/WAPA Transmission Corridor.

20.     BLM's ROW Grant, together with similar authorizations granted by the USFS and BOR, establishes the TWE Project's route across federal lands in Wyoming, Colorado, Utah, and Nevada.  As a practical matter, the BLM's ROW Grant also establishes the Project's route across the intervening state and private lands, including the lands covered by the Conservation Easement.

21.     After obtaining the BLM ROW Grant, TransWest has spent the last two years acquiring the necessary easements over inholdings and other intervening private and state lands in all four states.

22.     To date, TransWest has acquired easements from approximately 84% of the owners of the private lands intersecting the federally-approved route.  As a result, to date, TransWest has secured approximately 91% of the 730-mile route, including both public and private land, across four states.

23.     TransWest expects to complete acquisition of the remaining transmission easements in 2020 and commence construction in 2020 or 2021.

### TransWest's Condemnation Authority Under Colorado Law

24.     As an electric transmission company, TransWest holds the power of eminent domain under Colorado law.

*25.*     TransWest is a "transmission company" and "electric light power company" within the meaning of Article 5, Title 38, Colorado Revised Statutes.  As such, Colorado law

provides that TransWest "*shall be entitled* to the right-of-way over or under the land, property, privileges, rights-of-way, and easements of other persons and corporations and to the right to erect its poles, wires, pipes, regulator stations, substations, systems, and offices upon making just compensation therefor in the manner provided by law." C.R.S. 38-5-104(1) (emphasis added).

### The Conservation Easement

26.     In December 2014, NRCS provided federal funding to create the Conservation Easement on 16,069 acres of private land in Moffat County, Colorado.  A copy of the Conservation Easement Deed was recorded in the books and records of Moffat County, Colorado on December 24, 2014 (No. 20144048).

27.     The Conservation Easement Deed states that NRCS' purpose in contributing federal funds for acquisition of the Conservation Easement was to "forever conserve the agricultural productivity of the Protected Property and its value for resource preservation and as open space."  Under the Conservation Easement Deed, NRCS acquired a property interest in the form of a "right of enforcement."  The Deed states that the purpose of the United States' right of enforcement is to "protect the public investment," and NRCS may exercise this right "in the sole discretion of the Secretary [of Agriculture]."

28.     The Conservation Easement Deed expressly prohibits the "granting" of transmission line easements.  Nevertheless, the Conservation Easement Deed acknowledges that the Conservation Easement can be terminated, in whole or in part, through condemnation proceedings, and expressly authorizes the United States, through NRCS, to consent to condemnation:

> If this Easement is taken, in whole or in part, by exercise of the
> power of eminent domain, or acquired by purchase in lieu of

> condemnation, so as to terminate this Easement in whole or in part, or if circumstances arise in the future that render the purpose of this Easement impossible to accomplish, this Easement can only be terminated or extinguished, whether in whole or in part, by judicial proceedings in a court of competent jurisdiction…. Notwithstanding the foregoing, because the United States has an interest in this Easement, the United States must consent to any termination, extinguishment, eminent domain and/or condemnation action involving the Property.

29.     NRCS' right to consent to condemnation is part of NRCS' right of enforcement, and as such, is a non-delegable federal right subject to NRCS' sole discretion.

30.     The Conservation Easement is, and always has been, subject to all terms and conditions required by ACEP, 16 U.S.C. § 3865 *et seq.*

31.     ACEP's terms and conditions included the following land eligibility restriction and funding prohibition:

> The Secretary [of Agriculture] may not use program funds for the purposes of acquiring an easement on … lands where the purposes of the program would be undermined due to on-site or off-site conditions, such as … proposed or existing rights of way, infrastructure development, or adjacent land uses.

16 U.S.C. § 3865d(a)(4) (2014 version).

32.     Under this provision of ACEP, NRCS did not have the authority to fund a conservation easement that would interfere with proposed rights of way or infrastructure project objectives of another agency.

33.     The TWE Project's impacts within the 16,069-acre Conservation Easement will be minimal and localized.  Within the Conservation Easement, the Project will require four transmission towers, 0.89 miles of transmission centerline, an access road, and a temporary construction area.  The associated easements (collectively, "Transmission Easements") will

occupy less than 30 acres, or less than 0.19% of the total Conservation Easement area.  The

Transmission Easements will be located within the BLM/WAPA Transmission Corridor, near the

outer boundary of the Conservation Easement and in close proximity to U.S. Highway 40.

*NRCS' Decision to Fund the Conservation Easement*

34.    When NRCS funded the Conservation Easement in December 2014, NRCS knew

that:

- the Conservation Easement would be co-located with the BLM/WAPA Transmission Corridor and the TWE Project,

- a year and half earlier, in June 2013, BLM and WAPA had released a 2,000-page Draft EIS for the TWE Project,

- the Draft EIS identified **all** of the alternative Project routes that would receive further consideration in the Final EIS, and from which BLM and WAPA would select the final Project route,

- **all** of the alternative routes identified in the Draft EIS crossed private land within the proposed Conservation Easement,

- the Draft EIS reflected BLM's and WAPA's infrastructure project objectives,

- BLM's and WAPA's infrastructure project objectives required the TWE Project to cross the Conservation Easement,

- preventing TransWest from acquiring transmission easements within the Conservation Easement would undermine BLM's and WAPA's infrastructure project objectives,

- TransWest would have no ability to re-route the TWE Project in a manner that deviated from its BLM ROW, and therefore would have no ability to re-route the TWE Project to avoid the Conservation Easement, and therefore,

- TransWest would require transmission easements across the private land within the Conservation Easement and would need to condemn those easements pursuant to Colorado law.

35.     After learning that NRCS had funded the Conservation Easement, TransWest

wrote to NRCS on May 19, 2015, to express its concerns about a possible conflict between the

Conservation Easement and the Project.  In response, NRCS Chief Jason Weller assured

TransWest that no conflict existed.

36.     Specifically, on June 23, 2015, Chief Weller sent a letter to TransWest that stated

as follows:

> [A]t the time of project selection, Colorado NRCS reviewed
> information on the proposed transmission line and the multiple
> routes under consideration [in the EIS process], and determined that
> a conservation easement on the Cross Mountain Ranch could
> achieve the [statutory purposes] after reviewing the proposed routes.
> Therefore, Colorado NRCS had no reason to withhold funding or
> delay … acquisition of the Cross Mountain Ranch easement.

In an attachment to the letter, Chief Weller further explained:

> Prior to funding Cross Mountain Ranch, NRCS CO fully evaluated
> the transmission line and the easement purposes, and determined
> that the easement could achieve the purposes of the program even if
> the proposed utility corridors [identified in the Draft EIS issued in
> June 2013] became planned utility corridors….
>
> Upon learning of TWE alignment from the Audubon Society [on
> September 5, 2013], [NRCS CO] determined that the proposed
> easement could still achieve the purposes of the program and
> therefore proceeded forward for funding.

37.     Accordingly, before funding the Conservation Easement, NRCS accepted all

impacts resulting from the Conservation Easement's co-location with the BLM/WAPA

Transmission Corridor and the TWE Project.

38.     Based on Chief Weller's letter, TransWest reasonably expected that NRCS would

administer the Conservation Easement in a manner consistent with the pre-funding determination

described in Chief Weller's letter, and in particular, that NRCS would enable TransWest's use of

the BLM/WAPA Transmission Corridor by consenting to any condemnation action that might be necessary. In reliance on Chief Weller's assurances, to date TransWest has spent more than $25 million in acquiring rights-of-way along the Project route determined by BLM and WAPA, including surveys, title work, appraisals, legal fees, and payments to landowners.

### NRCS' Failure to Comply with NEPA in Granting the Conservation Easement

39.     Before granting or funding a conservation easement, NRCS is required to comply with the environmental review provisions of NEPA; implementing regulations of the Council on Environmental Quality, 40 C.F.R. §§ 1500–1508; and NRCS regulations concerning the implementation of NEPA, 7 C.F.R. § 650 *et. seq.*

40.     Under NEPA and the applicable regulations, NRCS was required to conduct a site-specific environmental review of the potential impacts of granting the Conservation Easement on the route for the TWE Project being studied by BLM and other agencies.

41.     NRCS failed to conduct the environmental review required by NEPA before approving and funding the Conservation Easement.

42.     At a minimum, under NRCS regulations, NRCS was required to complete an "Environmental Evaluation Worksheet," NRCS-CPA-52 (April 2013), before approving and funding the easement. In completing the form, NRCS would have been required to assess the environmental impacts of funding the Conservation Easement on the proposed route for the TWE Project. It would also have been required to address important questions such as "Does the preferred alternative establish a precedent for future actions with significant impacts or represent a decision in principle about a future consideration?" Based on NRCS' current position on the

effect of the Conservation Easement, NRCS would have had to answer that question "Yes," which would have triggered consideration of a site-specific NEPA analysis.

43.     Despite NRCS' procedures to implement NEPA, including completion of the Environmental Evaluation Worksheet and preparation of a site-specific environmental analysis (either EA or EIS), NRCS failed to follow those procedures or to otherwise evaluate the environmental impacts of granting and funding the Conservation Easement.

44.     In its EIS for the TWE Project, BLM determined that the most environmentally sound route for the transmission line was through the area now covered in part by the Conservation Easement.  BLM explained the basis for its selection for the route for its transmission lines in Colorado:

> The agency preferred alternative route through Colorado was chosen to minimize impacts to natural resources (including sage-grouse), as well as human resources (including visual resources, and private lands).  This required consideration not only of the potential impacts of these resources in Colorado, but also consideration of the impacts of the resources in Wyoming and Utah because the preferred alternative must match across state lines.

Final EIS for TWE Project, Vol. I at 2-76 (April 2015).

45.     Given BLM's ROD for the TWE Project, there is no feasible alternative route for location of the transmission line.  Furthermore, even if such a route were possible, it would require relocation of the transmission line to more environmentally sensitive lands, including lands within critical sage-grouse habitat, thus increasing environmental impacts of the project.

46.     TransWest is adversely affected by NRCS' failure to conduct the required environmental analysis under NEPA.

47.     Under the terms of the Conservation Easement as currently administered by NRCS, TransWest will not be able to build the TWE Project.  Alternatively, TransWest will be forced to attempt to move the transmission line onto lands with far greater environmental impacts.  Any attempted re-route of the transmission line, even if possible, would require a new BLM analysis, would cause significant delay, and would substantially increase the cost of the Project.

48.     Being forced to attempt to move the transmission lines to lands containing critical sage-grouse habitat and other environmental concerns would also defeat TransWest's interest in building the transmission project through the most environmentally sound route, an interest TransWest has publicly expressed since the beginning of the project.  *See* TransWest's website at http://www.transwestexpress.net/stewardship/index.shtml (noting "[t]he TWE Project not only will ensure delivery of a vital renewable wind-energy resource for a growing America but also . . . support environmental protection").

### *NRCS' Obligation to Consent to Condemnation*

49.     Having funded the Conservation Easement subject to a determination that the Conservation Easement would satisfy all program purposes despite its co-location with the BLM/WAPA Transmission Corridor and the TWE Project, NRCS effectively consented to condemnation of a portion of the Conservation Easement as necessary for the Project's transmission lines.

50.     NRCS must now administer and enforce the Conservation Easement in a manner consistent with that determination.

51.     Given NRCS' pre-funding decision, NRCS has no rational basis for administering or enforcing the Conservation Easement in any manner that precludes TransWest's condemnation of necessary transmission easements within the Conservation Easement.

52.     NRCS has unlawfully refused to consent to TransWest's condemnation of the transmission easements within the Conservation Easement, or in the alternative has unlawfully withheld or unreasonably delayed that consent under 5 U.S.C. § 706(1).

53.     In violation of ACEP, NRCS has knowingly interfered with the infrastructure project objectives of BLM and WAPA, to the detriment of TransWest.

54.     Since October 2018, TransWest has sought to obtain NRCS' consent to condemnation of the transmission easements.  NRCS has failed, and refused, to consent.

55.     NRCS claims that TransWest cannot condemn the Transmission Easements without NRCS' consent, yet NRCS also claims that it cannot provide that consent.  In effect, NRCS claims, in violation of 16 U.S.C. § 3865d(a)(4) and without having conducted any environmental review, that TransWest cannot use the BLM/WAPA Transmission Corridor.

## FIRST CLAIM FOR RELIEF
### *(Violation of NEPA)*

56.     TransWest re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above.

57.     By failing to conduct the required environmental review on the effects of approving and funding the Conservation Easement on the TWE Project route, NRCS violated NEPA, the Council on Environmental Quality's NEPA regulations, and its own NEPA regulations.

## SECOND CLAIM FOR RELIEF
### *(Violation of ACEP)*

58.     TransWest re-alleges and incorporates by reference the allegations set forth in paragraphs 1 through 55 above.

59.     By funding the Conservation Easement in conflict with a proposed right-of-way for the TWE Project, and despite knowing the conflicting infrastructure plans of the BLM and WAPA, NRCS violated ACEP, 16 U.S.C. § 3865d(a)(4) (2014 version).

60.     By refusing to consent to condemnation of a portion of the Conservation Easement, so as to enable construction of the TWE Project to proceed, NRCS violated ACEP.

## PRAYER FOR RELIEF

TransWest respectfully requests that this Court:

A.     Find that NRCS violated NEPA in approving and funding the Conservation Easement.

B.     Find that NRCS violated ACEP in approving and funding the Conservation Easement.

C.     Find that NRCS' refusal to consent to TransWest's condemnation of a portion of the Conservation Easement is arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with law.

D.     Set aside and vacate the Conservation Easement pursuant to 5 U.S.C. § 706(2), or alternatively compel NRCS to consent to condemnation of a portion of the Conservation Easement pursuant to 5 U.S.C. § 706(1).

E.     Grant such other and further relief as may be necessary and appropriate.

Respectfully submitted this 19th day of December, 2019.

s/ John F. Shepherd
John F. Shepherd, #9956
Utsarga Bhattarai, #52241
HOLLAND & HART LLP
P.O. Box 8749
Denver, CO  80201-8749
Phone: (303) 295-8000
Fax: (303) 295-8261
jshepherd@hollandhart.com
ubhattarai@hollandhart.com

**Attorneys for Plaintiff TransWest
Express LLC**

Plaintiff's Address:
TransWest Express LLC
555 Seventeenth Street, Suite 2400
Denver, CO 80202

13964828

16