## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge William J. Martínez

Civil Action No. 19-cv-3603-WJM-STV

TRANSWEST EXPRESS LLC, a Delaware limited liability company,

 Plaintiff,

and

PACIFICORP, an Oregon corporation,

 Plaintiff-Intervenor,

v.

THOMAS VILSACK, Secretary of the United States Department of Agriculture, TERRY CROSBY, Acting Chief of the Natural Resources Conservation Service, and CLINT EVANS, State Conservationist for the Colorado State Office of the Natural Resources Conservation Service,

 Defendants,

and

CROSS MOUNTAIN RANCH LIMITED PARTNERSHIP, a California limited partnership, and
COLORADO CATTLEMEN'S AGRICULTURAL LAND TRUST,

 Defendant-Intervenors.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR VOLUNTARY REMAND AND MOTION FOR STAY AND DENYING AS MOOT BOTH TRANSWEST'S MOTION TO DISMISS CROSS MOUNTAIN'S COUNTERCLAIM AND DEFENDANTS' MOTION TO DISMISS AMENDED CROSS-CLAIM**

---

Plaintiff TransWest Express LLC ("TransWest") and Plaintiff-Intervenor PacifiCorp seek judicial review under the Administrative Procedure Act, 5 U.S.C. § 706

of the National Resources Conservation Service ("NRCS")'s approval and funding of the Cross Mountain Lower Ranch Conservation Easement (the "Conservation Easement") in December 2014, as well as NRCS's subsequent refusal to consent to TransWest's condemnation of a portion of the Conservation Easement.  (ECF No. 40.)

This matter is before the Court on the following motions:

1. The Motion for Voluntary Remand and Motion for Stay ("Motion for Voluntary Remand"), filed by Thomas Vilsack,[1] Secretary of the United States Department of Agriculture, Terry Crosby,[2] Acting Chief of NRCS, and Clint Evans, State Conservationist for the Colorado State Office of NRCS (collectively, "Defendants")  (ECF No. 69);

2. TransWest's Motion to Dismiss Cross Mountain's Counterclaim ("TransWest's Motion to Dismiss), filed on June 5, 2020 (ECF No. 68); and

3. Defendants' Motion to Dismiss Amended Cross-Claim ("Defendants' Motion to Dismiss), filed on August 27, 2020 (ECF No. 93).

For the reasons explained below, the Court grants Defendants' Motion for Voluntary Remand and denies as moot TransWest's Motion to Dismiss Cross Mountain's Counterclaim and Defendants' Motion to Dismiss Amended Cross-Claim.

---

[1] On February 23, 2021, Congress confirmed Thomas Vilsack as the Secretary of the United States Department of Agriculture.  Pursuant to Federal Rule of Civil Procedure 25(d), Vilsack is substituted for Sonny Perdue, former Secretary of the United States Department of Agriculture, as the Defendant in this suit.

[2] Terry Crosby replaced Matthew Lohr as Acting Chief of the National Resources Conservation Service.  Pursuant to Rule 25(d), Crosby is substituted for Lohr as the Defendant in this suit.

## I. BACKGROUND[3]

Since 2008, TransWest has been actively engaged in developing the TransWest Express Transmission Project ("TWE Project"), a high-voltage transmission system that includes approximately 730 miles of transmission lines and will provide electric transmission infrastructure to support large-scale renewable energy development throughout the western United States. (Plaintiff's Second Amended Complaint, ECF No. 40 ¶ 6.)

Approximately two-thirds of the TWE Project's transmission line is located on federal land managed by the Bureau of Land Management ("BLM"), the U.S. Forest Service, and the Bureau of Reclamation. (*Id.* ¶ 17.) In analyzing the TWE Project, BLM and the U.S. Department of Energy's Western Area Power Administration ("WAPA") worked with 50 cooperating agencies, numerous Indian tribes, and numerous state and local agencies to prepare an Environmental Impact Statement ("EIS") for the TWE Project under the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321. (*Id.* ¶ 18.) During the NEPA review process, the agencies "evaluated thousands of miles of alternative Project routes to determine the single route that would best mitigate the environmental impacts of the Projects as a whole." (*Id.*) The Draft EIS, published in June 2013, showed BLM's and WAPA's plan to route the TWE Project's transmission lines through or immediately adjacent to the lands later included in the Conservation Easement. (*Id.* ¶ 19.)

---

[3] The following factual summary is taken from Plaintiff's Second Amended Complaint and Defendants' Motion for Voluntary Remand, which the Court accepts as true solely for purposes of this Order.

In July 2011, the United States of America Commodity Credit Corporation ("CCC"), acting through NRCS, entered into a Cooperative Agreement with the Colorado Cattlemen's Association Land Trust ("CCALT"), which obligated CCC funds for the acquisition of specified conservation easements by CCALT. (ECF No. 69 at 3.)

In December 2014, NRCS approved and provided approximately $3.3 million of federal funding to create the Conservation Easement, which covers approximately 16,069 acres of property owned by Cross Mountain Ranch LLC ("Cross Mountain") in Moffat County, Colorado. (ECF No. 40 ¶¶ 1, 29.) The Conservation Easement's purpose is to "forever conserve the agricultural productivity of the Protected Property and its value for resource preservation and as open space." (*Id.* ¶ 30.) "Before approving and funding the Conservation Easement, NRCS was aware of the NEPA process and BLM's and WAPA's ongoing analysis of the most environmentally sound route for the TWE Project, including through lands ultimately included within the Conservation Easement." (*Id.* ¶ 19; *see also id.* ¶ 39.)

Despite providing TransWest certain assurances that no conflict existed, in December 2019, NRCS refused to formally consent to TransWest's condemnation and use of the transmission easements within the Conservation Easement necessary to complete the TWE.[4] (*Id.* ¶¶ 40–43, 62.)

TransWest filed this lawsuit on December 19, 2019 and filed a second amended complaint on March 20, 2020. (ECF Nos. 1, 40.) TranWest seeks judicial review of two

---

[4] Within the Conservation Easement, the TWE Project will require four transmission towers, 0.89 miles of transmission centerline, an access road, and a temporary construction area, which will collectively occupy less than 30 acres, or less than 0.19% of the total

4

actions taken by NRCS.  First, TransWest seeks review of NRCS's approval and funding of the Conservation Easement, which TransWest alleged occurred in violation of NEPA, the Agricultural Conservation Easement Program ("ACEP"), 16 U.S.C. § 3865, *et. seq.*, and NRCS's own regulations under the Farm and Ranch Lands Protection Program ("FRPP"), 7 C.F.R. § 1491.4(g)(8).  Second, TransWest seeks review of NRCS's subsequent decision in 2019 to withhold consent for TransWest's condemnation of 30 acres of the private property included in the Conservation Easement for necessary transmission easements.  (ECF No. 40.)

On January 9, 2020, Cross Mountain, which owns the land subject to the Conservation Easement, and CCALT, the grantee, moved to intervene in this action to protect their property interests and prevent modifications to the Conservation Easement. (ECF No. 20.)

Thereafter, on February 5, 2020, PacifiCorp moved to intervene in this action. (ECF No. 34.)  Like TransWest, PacifiCorp seeks to construct a transmission line that crosses the Conservation Easement (the "Gateway Project"), which is being blocked by the NRCS.  (*Id.* at 3, 5; ECF No. 61.)

## II. DEFENDANTS' MOTION FOR VOLUNTARY REMAND

In the Motion for Voluntary Remand, the Defendants seek a voluntary remand of NRCS's decisions to approve the Conservation Easement Deed and accept a property interest in the Conservation Easement on behalf of the United States, and a 60-day stay of the case so that NRCS may further review those decisions.  (ECF No. 69.)

---

Conservation Easement area.  (*Id.* ¶ 37.)

PacifiCorp represents that it "supports the Motion and believes it is the appropriate procedure at this juncture." (ECF No. 78 at 2.) However, TransWest, Cross Mountain, and CCALT oppose Defendants' request. (ECF Nos. 77, 120.)

**A.     Voluntary Remand**

"Administrative agencies have an inherent authority to reconsider their own decisions, since the power to decide in the first instance carries with it the power to reconsider." *Trujillo v. Gen. Elec. Co.*, 621 F.2d 1084, 1086 (10th Cir. 1980) (citing *Albertson v. Fed. Commc'ns Comm'n*, 182 F.2d 397, 399 (D.C. Cir. 1950)). Federal courts may grant agency motions for voluntary remand, "preferring to allow agencies to cure their own mistakes rather than wasting the courts' and the parties' resources reviewing a record that both sides acknowledge to be incorrect or incomplete." *Ethyl Corp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993); *see also Central Power & Light Co. v. United States*, 634 F.2d 137, 145 (5th Cir. 1980) (recognizing that a "voluntary remand" is a request by an agency for remand without judicial consideration of the merits whereas a "court-generated remand" is a "remand after consideration of the merits").

Specifically, courts have recognized that voluntary remand is generally appropriate: (1) when new evidence becomes available after an agency's original decision was rendered, *see, e.g.*, *Ethyl Corp*, 989 F.2d at 523–24 (granting an agency's motion for voluntary remand where the agency admitted that new evidence developed that undermined the stated basis for its action), or (2) where "intervening events outside of the agency's control" may affect the validity of an agency's actions, *SKF USA Inc. v.*

*United States,* 254 F.3d 1022, 1028 (Fed. Cir. 2001). Even in the absence of new evidence or an intervening event, however, courts retain the discretion to remand an agency decision when an agency has raised "substantial and legitimate" concerns in support of remand. *Sierra Club v. Van Antwerp*, 560 F. Supp. 2d 21, 23 (D.D.C. 2008). As the Sixth Circuit recognized, "when an agency seeks a remand to take further action consistent with correct legal standards, courts should permit such a remand in the absence of apparent or clearly articulated countervailing reasons." *Citizens Against Pellissippi Parkway Extension, Inc. v. Mineta*, 375 F.3d 412, 416 (6th Cir. 2004). "Otherwise, judicial review is turned into a game in which an agency is 'punished' for procedural omissions by being forced to defend them well after the agency has decided to reconsider." *Id.*

**B.     Analysis**

The Defendants request a voluntary remand so that NRCS can "reexamine its decisions to (1) approve the [Conservation Easement] Deed; and (2) accept the property interests conveyed to the United States" and determine whether these actions are "consistent with applicable laws, regulations, and policies." (ECF No. 69 at 10.)

Evans signed a declaration in which he represents that NRCS "believes its analysis and findings are not fully documented in the administrative record," and raises the possibility that "the documented record does not provide an adequate basis for judicial review" and "its actions may have been in error." (ECF No. 69-1 at 4 ¶ 16.) Specifically, Defendants represent "that the administrative record does not adequately explain the following" questions:

7

- How NRCS reached the conclusion that the Deed should not include an exception from the prohibition on construction of transmission lines to allow construction of the TWE and Gateway transmission line projects to proceed;

- NRCS's understanding of the intended effect of the ambiguous language in Clause 31 of the [C]onservation [E]asement [D]eed providing for consent to condemnation by NRCS "involving the property";

- How the changes in statutory and regulatory authorities that occurred between the time the cooperative agreement was modified in September of 2013 and when the Deed was approved in December of [2014] applied to decisions made by NRCS during that time; and

- NRCS's knowledge and understanding of the legal and technical feasibility of locating the TWE and Gateway transmission lines to avoid the Property, and of the environmental effects of constructing the transmission lines on any such alternative routes. It is not clear how information available at the time, including the analysis of environmental effects from the Draft Environmental Impact Statement prepared by the BLM and [WAPA] for the transmission lines was considered.

(ECF No. 69 at 11; ECF No. 69-1 at 4 ¶ 17.)

    1.    <u>Cross Mountain and CCALT's Opposition</u>

Cross Mountain and CCALT object to the Motion, arguing that reconsideration is untimely as NRCS's funding of the Conservation Easement was approved nearly seven years ago, and "Intervenors relied on the approval, and their property rights were vested." (ECF No. 77 at 10.)

The "reasonableness of an agency's reconsideration implicates two opposing policies: the desirability of finality on one hand and the public's interest in reaching what, ultimately, appears to be the right result on the other." *Mactal v. Chao*, 286 F.3d 822,

826 (5th Cir. 2002) (internal quotation marks omitted). "An agency may not reconsider its own decision if to do so would be arbitrary, capricious, or an abuse of discretion." *Id.* (citing 5 U.S.C. § 706(2)(A).) While there is no "hard and fast rule regarding what constitutes 'reasonable time' with respect to voluntary remand," courts must "analyze the facts of each case in an effort to reach an equitable outcome." *Frito-Lay, Inc. v. U.S. Dep't of Labor*, 20 F. Supp. 3d 548, 555 (N.D. Tex. 2014) (collecting cases)

While it is true that several years have passed since NRCS decided to approve the Conservation Easement Deed and accept the property interests conveyed to the United States, the Court cannot on the record before it conclude that Defendants' request for voluntary remand is untimely, or an arbitrary and capricious act. After all, Defendants filed the Motion not long after the lawsuit was filed when they determined that NRCS's analysis and findings may not be fully documented in the administrative record.

Cross Mountain and CCALT next argue that remand should be denied because Defendants' request is not made is good faith and that they will suffer prejudice as a result of NRCS's reconsideration. (ECF No. 77 at 10.) They speculate that Defendants are undertaking a "gerrymandered reconsideration process," that "NRCS has clearly succumbed to political pressure to give TransWest what it wants," and that "TransWest, PacifiCorp and the Federal Defendants are now attempting to eliminate Intervenors' property interests without the case ever being heard on the merits." (*Id.* at 3–4, 13.) However, despite their speculation and rhetoric, Cross Mountain and CCALT do not provide any credible evidence suggesting that Defendants are acting in bad faith. Nor

9

do they provide any evidence that Defendants' request for remand is based on a mere change in policy preferences.

Significantly, despite Cross Mountain and CCALT's contentions, the Court finds that no party will be prejudiced were it to grant Defendants' request for voluntary remand. Because Defendants estimate that they can complete their reconsideration within 60 days (ECF No. 69 at 12), the delay will not materially affect or delay this litigation. "Should NRCS affirm its prior decision on remand, the litigation can proceed, and [TransWest] and PacifiCorp can pursue other relief" without prejudice. (*Id.*) Conversely, if NRCS changes its decision on remand, Cross Mountain and CCALT will have the opportunity to seek judicial review of the reconsidered final agency decision, and as a consequence they will not be deprived of an opportunity to be heard.

Moreover, remand is the most efficient use of judicial resources. To the extent that NRCS's analysis and findings are not fully documented in the administrative record, it is appropriate to allow NRCS the opportunity to reanalyze its own decisions "rather than wasting the [Court's] and the parties' resources reviewing a record" that may be incomplete or inaccurate. *Ethyl Corp.*, 989 F.2d at 524; *see also Nat. Res. Def. Council v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1141 (C.D. Cal. 2002) (explaining that voluntary remand "promotes judicial economy by allowing the relevant agency to reconsider and rectify an erroneous decision without further expenditure of judicial resources").

Thus, the Court finds Cross Mountain and CCALT's arguments against voluntary remand to be unavailing.

      2.      TransWest's Opposition

TransWest opposes Defendants' Motion for Voluntary Remand on the basis that: (1) the parties have completed their merits briefing and "remand will only delay the ultimate resolution of this case"; and (2) remand without vacatur is inappropriate. (ECF No. 120.)

However, the fact that the parties have briefed the merits of this action does not weigh against granting remand. As explained above, the delay involved with the requested remand is minimal. To the extent Defendants do not amend their prior decision-making on remand, there is no prejudice to the current action as the Court will analyze the arguments that have already been briefed. Moreover, as previously noted, in the event the NRCS upon reconsideration issues a revised final agency decision, all parties retain their right to challenge the reconsidered decision. In such event the parties' current merits briefing will no doubt analyze numerous issues common to both sets of final decisions, and thus most surely will not have been prepared for naught.

The Court also disagrees that vacatur is required at this stage. As set forth in *Allied-Signal, Inc. v. United States Nuclear Regulatory Commission*, 988 F.2d 146 (D.C. Cir. 1993), the decision whether to vacate depends on the seriousness of the deficiencies in the agency's decision and "the disruptive consequences of an interim change that may itself be changed." *Id.* at 150–51. If the Court were to remand with vacatur, the Court would irrevocably disrupt the status quo. Such a vast reshuffling of the parties' interests would be plainly inappropriate at this stage, particularly because the Court has not yet made any findings about whether the NRCS's actions were

11

erroneous.

Thus, for the reasons set forth above, the Court will remand the action without vacatur to preserve the status quo while the Defendants reconsider their decisions to approve the Conservation Easement Deed and accept the property interests conveyed to the United States.

3. Stay of Proceedings

Defendants have requested a 60-day stay of this case "with the expectation that it will complete the remand within that period, or be required to seek and justify extension of the stay if it does not."  (ECF No. 69 at 12.)

The Court will grant a 60-day stay for good cause shown.  To keep the parties and the Court apprised of their progress, Defendants shall file a status report 45 days after the date of this Order to advise the Court whether it appears that they will complete their remand as scheduled, or whether it appears that a short extension beyond the 60-day stay is necessary.

## II.  MOTIONS TO DISMISS

In light of the fact that Defendants are voluntarily and on their own motion reconsidering their agency decision, that agency decision is no longer final.  The motions to dismiss Cross Mountain and CCALT's cross and counterclaims (ECF Nos. 68, 93) are both directed at this superseded final agency decision.  As a consequence these Motions are denied as moot without prejudice to refiling, if appropriate, after NRCS completes its reconsidered analysis on remand.

### III. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Defendants' Motion for Voluntary Remand and Motion for Stay (ECF No. 69) is GRANTED;

2. This action is STAYED for 60-days pending resolution of NRCS's voluntary remand;

3. Defendants are DIRECTED to file a status report 45 days from the date of this Order to advise the Court whether it appears that it will complete its reconsideration on remand as scheduled;

4. TransWest's Motion to Dismiss Cross Mountain's Counterclaim (ECF No. 68) is DENIED AS MOOT; and

5. Defendants' Motion to Dismiss Amended Cross-Claim (ECF No. 93) is DENIED AS MOOT.

Dated this 19th day of March, 2021.

BY THE COURT:

William J. Martinez
United States District Judge